**KASHKASHIAN, DOVER & ASSOCIATES**
Arsen Kashkashian, Esquire
Attorney Identification No. 12779
10 Canal Street, Suite 204
Bristol, PA 19007
(215) 781-9500
(215) 781-6500                                             *Attorney for Plaintiff*

| | |
|---|---|
| RYAN KIM<br>1125 SPRUCE STREET<br>PHILADELPHIA, PA 19107<br>            Plaintiff<br><br>vs.<br><br>JEFFREY KOBLENZ<br>33 WAYNE STREET<br>UNIT 3<br>WEST JERSEY CITY, NJ 07302<br><br>            Defendant. | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA PENNSYLVANIA<br><br><br><br><br><br>Docket No.: |

## COMPLAINT OF DEFAMATION/ LIBEL

1) Plaintiff, Ryan Kim, is an adult individual residing at 1125 Spruce Street, Philadelphia, PA 19107.

2) Defendant, Jeffrey Koblenz, is an adult individual residing at

3) The amount of retribution for damage to reputation is valued at $75,000 +.

## COUNT I
## DEFAMATION (Libel)

3) Beginning on April 27, 2021, Plaintiff began receiving emails from Defendant, Jeffrey Koblenz, demanding the return of monies that Koblenz invested for a Real Estate project at 251 Fulton Street, Philadelphia. The investment made by Koblenz was $80,000. Koblenz lent his funds to Fishtown Royal Holdings DE LLC, a holding company for 251 Fulton Street LLC, located at 1125 Spruce Street, Philadelphia.

4) There has been no default by 251 Fulton Street LLC, and the request of funds to be returned to Koblenz is without merit or right, since there has been no default by 251 Fulton Street LLC to Koblenz.

5) Koblenz began harassing Plaintiff, Ryan Kim, by emails directed to him, to Adam Moccio and Thor Torrens, placing pressure on Ryan Kim to pay Koblenz even though there was no default.

6) The emails were directed to a partner of Plaintiff, Adam Moccio, and to a personal friend of Plaintiff, being Thor Torrens, in which the Plaintiff was accused of forming a sham operation and using the monies invested not for the Fulton Ave property, but for another investment by Wolcott Management Services, LLC.

7) A series of emails, which are attached as Exhibit A, are of defamatory nature. In said emails, the Plaintiff was defamed to his partner and his personal friend.

8) Defendant, Koblenz, even with communications from Plaintiff's counsel, has refused to stop and continues to make false accusations, defamatory accusations and continues to change his position, even when Plaintiff is willing to satisfy the Defendant's claim.

9) Defendant, Koblenz, had agreed to accept $29,500 in full settlement upon the execution of a Termination Agreement, which is attached as Exhibit B. Once the Termination Agreement was provided to Jeffrey Koblenz, he then changed his position and increased the amount of his request to $37,000.

10) In several of the emails, Defendant Koblenz accuses the Plaintiff of stealing monies from the corporation that he has invested his funds. Defendant further in the emails has accused Plaintiff of fraudulent conduct int that he has placed Koblenz's money into an entity that Koblenz believes does not exist. This accusation is false and Koblenz knows this because he has received dividend checks from the corporation in which he has invested.

11) The emails attached show a history of harassment, attempted extortion, lies and calling Mr. Kim's conduct fraudulent. These are all lies and the Defendant knows that these are lies. Additionally, the emails were not only sent to the Plaintiff, but also his business associates and possible other third parties unbeknownst to Ryan Kim.

12) Since all of the emails are writings, Plaintiff believes that Defendant has committed Libel against him and demands damages for loss of his reputation.

**WHEREFORE**, Plaintiff demands Judgment in it's favor and requests this Honorable Court to determine damages for his loss of reputation.

## COUNT II
## INVASION OF PRIVACY

13) The Defendant, in his latest emails, has indicated that he plans to email the parents of Plaintiff's wife, concerning the dispute with the Plaintiff. This is being done in order to pressure the Plaintiff to a higher settlement. Whereas the parents of Mrs. Kim have nothing at all to do with the businesses of Ryan Kim or any of his companies or Real Estate Developments.

14) Beyond that, Defendant has also indicated that he plans to provide the same information as stated above, to Plaintiff's parents. There is no connection to Plaintiff's parents to his businesses, companies or Real Estate Developments.

15) This is a clear indication of Defendant invading the privacy of Ryan Kim. This invasion of privacy is an attempted extortion of the Plaintiff without any right by the Defendant or of the Defendant having any interest with the parents or in-laws of Ryan Kim.

16) There is no connection between Ryan Kim, his parents and his in-laws to any of the businesses of the Plaintiff and certainly not of any investment made by Jeffrey Koblenz.

17) This invasion of privacy has caused Plaintiff mental distress, distress between himself and his wife, distress between himself and his partner Adam Moccio and distress between himself and his friend, Thor Torrens.

18) Defendant has invaded the privacy of Plaintiff by indicating that he would provide the attached emails and information as to his accusations to the parents of Mr. Kim and to his wife's parents. The

parents of Mr. Kim and his wife, have nothing to do with the business that Koblenz is invested in. This is a blatant attempt at extortion.

      **WHEREFORE**, Plaintiff requests damages for this invasion of privacy by Defendant.

Respectfully submitted,

Date: 6/17/21

Arsen Kashkashian, Esquire
Attorney for Plaintiff

**From:** ryanlawrencekim@gmail.com,
**To:** kashlaw@aol.com,
**Subject:** Fwd: Purchase of properties in Philadelphia by Ryan Kim
**Date:** Tue, Jun 8, 2021 5:10 pm

I've had enough of this. He is now harassing my family.

---------- Forwarded message ----------
From: **Jeff Koblenz** <jeff.koblenz@gmail.com>
Date: Tue, Jun 8, 2021 at 4:59 PM
Subject: Purchase of properties in Philadelphia by Ryan Kim
To: Adam Mocio <aman123105@aol.com>, thor torrens <thortorrens@yahoo.com>, Ryan Kim <ryanlawrencekim@gmail.com>


Adam and Evan, (cc: Ryan)

I'm going to reach out to Ryan's extended family in Marlton and Suffern to see if we can avoid litigation and the expensive attorney fees.

Meanwhile, as we discussed, Ryan has purchased a few properties in 2020. Vacant Land and one building to renovate. Meanwhile, the properties managed by the MTL Property Holdings group are in a mess and I am told that money is missing from all the LLCs.

<u>See if the three of you can figure out how you can get my money back IMMEDIATELY.</u>

I HAVE STATEMENTS THAT SHOW I'M OWED $29,600 BEFORE THE PREFERRED DIVIDEND. Ryan needs to understand that I put in $80,000 and received $50,400 (63% of $80k) back, leaving $29,600 of principal. And, since you wanted to pay a 6% preferred dividend for use of my funds, it appears that $37,000 is a reasonable request. ($26,600 PLUS 6% preferred dividend.)

I'm told that Ryan took money from the LLC, but I don't really care to have to pursue this once I have my money.

After all, if $1.1 million was borrowed, where is the money? If 63% of 300,000 of investor money was returned, it's a mystery to me where hundreds of thousands of dollars have gone.

**Who has fiduciary responsibility here to the investors?** Adam? Evan? Thought Ryan supposed to be running 251 Fulton Street? Guess Adam taught him the business and he abandoned all the investors.

Here are a few properties Ryan bought. TOTAL $430,000 CASH to buy summer and fall of 2020!

https://www.zillow.com/homes/625-Hoffman-St-Philadelphia,-PA,-19148_rb/118340097_zpid/

https://www.zillow.com/homes/614-Hoffman-St-Philadelphia,-PA,-19148_rb/118336256_zpid/

https://www.zillow.com/homedetails/1933-S-6th-St-Philadelphia-PA-19148/118362765_zpid/

https://www.google.com/maps/place/1933+S+6th+St,+Philadelphia,+PA+19148/@39.9241719,-75.156309,3a,90y,109.9h,94.33t/data=!3m6!1e1!3m4!1seuY9PVouzbqKUy75.1561025

Jeff Koblenz, CPA



Exhibit "A"

**From:** jeff.koblenz@gmail.com,
**To:** ryanlawrencekim@gmail.com,
**Cc:** aman123105@aol.com, thortorrens@yahoo.com, kashlaw@aol.com,
**Subject:** Re: Koblenz funds are deemed 'stolen' by operation of law
**Date:** Mon, May 3, 2021 12:17 pm
**Attachments:** Subscription Agreement_Jeff - fake entity, state of DE.pdf (117K),
251 Fulton Street_OA_Jeff_v2 - fake entity, state of NY.pdf (366K)

Attached are not typos

On Mon, May 3, 2021 at 11:42 AM Ryan Kim <ryanlawrencekim@gmail.com> wrote:
> It's obvious, you are not reading the same docs we have...Where you not only list the exact name of the LLC where you sent funds that was received but also the exact EIN of the LLCs. So please help me understand where a typo becomes fraudulent. You sent the money to Fishtown Royal Holdings, LLC not the other name you continue to mention, if you did, those funds would have never cleared the account filing any sort of criminal accusation will be a clear waste of time and I will counter with harassment, defamation, and blackmail suit immediately after as you clearly have spewed lies and false representations through the many contacts that Evan continues to provide you with and in the letters you continue to send daily.
>
> We are moving through this as fast as we can here. When a complaint if filed, the opposing party has 30 days to respond and then the next move is made. We are not operating outside our agreement nor are we in default. Please refer to Mr. Torrens who brought you into this as your acting representative and 1st degree of contact. Evan acted as partner and your liaison with a 5% stake within 251 Fulton Street as reinforced by the tax returns. Lastly, not being able to deliver does not mean I did not accept, I received your certified letter addressed to my family over the weekend. Arsen, will be sending you an offer momentarily.
>
> On Mon, May 3, 2021 at 11:19 AM Jeff Koblenz <jeff.koblenz@gmail.com> wrote:
>> All three of you received the attached via USPS Certified Mail, except for RYAN LAWRENCE KIM, who refused receipt. Anyone surprised by the KIM decision on accepting mail, given KIM's past behavior, such as when Wells Fargo bank statements are requested on the LLC investments by investors?
>>
>> RYAN LAWRENCE KIM and Counselor Kashkashian are aware of KOBLENZ position on funds being stolen, given the documentation sent. KASHKASHIAN has been 'too slow' to respond and will be reported to the State of Pennsylvania at some point soon.
>>
>> EVAN BRIAN TORRENS has been copied on some communications from RYAN LAWRENCE KIM listing the fake entity: FISHTOWN ROYAL HOLDINGS DE LLC back in September and October 2018.
>>
>> If anyone wishes to report a crime in this matter, please advise me so that I may assist you with your report. The governments of the United States must serve the people by rooting out and disciplining those who violate the law in cases where there is no reasonable doubt.
>>
>> It is my opinion: You will be judged in this world by your behaviors; the Almighty knows the truth and will hold all accountable in the heavenly court for the transgressions against others.
>>
>> --
>>
>> Jeff Koblenz, CPA

**From:** ryanlawrencekim@gmail.com,
**To:** kashlaw@aol.com,
**Subject:** Fwd: Over Forty days ago, Koblenz demanded return of funds & provided evidence of FRAUDULENT inducement
**Date:** Tue, Jun 1, 2021 10:54 am
**Attachments:** May 31, 2021 - Statement of Amounts due under voided operating agreement $37,241.68.pdf (439K)

Sent from my iPhone

Begin forwarded message:

**From:** Jeff Koblenz <jeff.koblenz@gmail.com>
**Date:** June 1, 2021 at 10:45:59 AM EDT
**To:** Ryan Kim <ryanlawrencekim@gmail.com>, Adam Mocio <aman123105@aol.com>, thor torrens <thortorrens@yahoo.com>
**Subject: Over Forty days ago, Koblenz demanded return of funds & provided evidence of FRAUDULENT inducement**

Mr. Kim, Mr. Mocio, & Mr. Torrens.

Attachments: $37,241.68 Due as of May 31, 2021,

At least you admit to having taken the funds; now the challenge is for you to accept liability and honor the request to immediately return the funds to Koblenz and to avoid the Koblenz legal fees that will accrue to you under the 'personal guarantee'

The time has come for Koblenz to hand this matter to legal counsel and for you, Ryan Lawrence Kim, to accept liability, in accordance with law, for the reasonable collection fees under the 'personal guarantee' you executed. Refer to the P.S. below: You have a September 30, 2018, 7:01pm EST e-mail from Koblenz where Koblenz clearly explains the importance of the personal guarantee as a condition to receive the $80,000 investment and Koblenz clearly explains the collection costs that accrue to you, should you ignore my requests/demands -- You may search for it in your inbox. Evan Torrens is copied on this correspondence. You may request a copy of the e-mail evidence from Koblenz.

Personal guarantee states: **In addition, Guarantor hereby agrees to pay all of Investor's reasonable costs and expenses, including, attorneys' fees in the enforcement of this Guaranty, whether by suit, action, negotiation, arbitration or otherwise.**

There is sufficient evidence of 'consideration' to you for your signature on the personal guarantee; the e-mails indicates that you would not receive the $80,000 investment if not for Ryan Lawrence Kim's agreement and Adam Mocio's agreement to execute the aforementioned personal guarantee; Mr. Kim, you signed for yourself and for Adam Mocioi on / or about October 4, 2018 and you, Mr. Kim, delivered via e-mail the aforementioned personal guarantee on October 4, 2018 via email. It was the same day that you decided to change the entity name to FISHTOWN ROYAL HOLDINGS DE LLC (a 'fake' entity). in your 'Corrected Information' E-mail (which Koblenz has provided to you in prior correspondence several times).

**Mr. Kim, these choices you made followed by your confirmation that you made 'typos' should make you want to immediately return funds to Koblenz. Where is your desire to follow the**

**law?**

Over forty days ago, in accordance with the 'voided' operating agreement, voided by Koblenz, Koblenz has sent you Demands via e-mail, UPS overnight and Certified mail detailing your violations of the operating agreement, albeit voided by Koblenz.

Mr. Kim, you instructed your attorney to return funds to Koblenz, but you didn't comply with Koblenz demands for the immediate return of funds. Therefore, Koblenz has rejected the May 10, 2021 'buy-out' agreement provided by your counsel and has informed you on May 12, 2021 and again on May 28, 2021. Refer to the May 28, 2021 e-mail and the May 24, 2021 certified mail for details on Koblenz demand for payment. **Comply with Koblenz demands today!**

Mr. Kim, Koblenz has given you over forty days to avoid 'legal feels'. Koblenz has provided several warnings and opportunities to avoid paying Koblenz legal fees for a forthcoming complaint to be filed. Your liability to Koblenz is obvious. You executed a personal guarantee and you provided 'false' documentation to induce Koblenz investment.

Koblenz's attorney will be instructed to pursue all remedies under the law. against all appropriate persons.

All Counsel will be expected to follow the code of professional conduct for lawyers in any dealings,

Koblenz reserves all rights under the law. Koblenz has not waived any rights.

Jeff Koblenz, CPA


P.S. SEPTEMBER 30, 2018 E-MAIL AT at 7:01 PM EST
From: Jeff Koblenz <jeff.koblenz@gmail.com>
Sun, Sep 30, 2018 at 7:01 PM
To: Ryan Kim <ryanlawrencekim@gmail.com>

The Guarantee I seek was primarily due to the closing costs forecast at $66k and $33k. Prior to 'just now', I believed that these costs increase the overall capital needed and led to a lower % of 12.18% on profits. Looks like that has been changed? You can confirm.
Prior to that change, **it was important that I feel very strongly that the LLC and the Class B members jointly and severally liable to pay JeffKoblenz (or my ROTH IRA trust) on or before September 30, 2028 (Ten years from now), no less than the $80,000 principal investment and the 'cumulative ' preferred dividend of 6%.** Therefore, the total earnings due on or before September 30, 2028 will be $48,000 in addition to the$80,000 principal investment.
**The Guarantee of the Class B members further states it will reimburse Jeff Koblenz (or my ROTH IRA trust) 'any and all' costs of collection,including legal costs incurred subsequent to Jeff Koblenz (or my ROTH IRA trust) versus the Class B members and their heirs, trusts andestates.**
The aforementioned two guarantees will survive any bankruptcy filing by any aforementioned entity.

**Summary Statement of Investment**  ForgeTrust C/F/B/O
Interest is compounded monthly  Jeffrey Koblenz ROTH IRA
      Account Number   IRA784977

| Date | Description | Amount | Fees |
|---|---|---:|---:|
| 10/15/2018 | Fees | | 90.00 |
| 10/17/2018 | Fishtown Royal holdings | 80,000.00 | |
| 10/17/2018 | Q4 fees | | 12.00 |
| 10/17/2018 | asset purchase fee | | 40.00 |
| 10/17/2018 | wire fee | | 25.00 |
| 10/31/2018 | 6% Interest/pref div - 15 days | 200.00 | |
| 11/30/2018 | 6% Interest/pref div - one month | 401.00 | |
| 12/31/2018 | 6% Interest/pref div - one month | 403.01 | |
| 1/7/2019 | Q1 fees | | 30.00 |
| 1/7/2019 | Q1 fees | | 12.00 |
| 1/31/2019 | 6% Interest/pref div - one month | 405.02 | |
| 2/28/2019 | 6% Interest/pref div - one month | 407.05 | |
| 3/31/2019 | 6% Interest/pref div - one month | 409.08 | |
| 4/8/2019 | Q2 fees | | 30.00 |
| 4/8/2019 | Q2 fees | | 12.00 |
| 4/30/2019 | 6% Interest/pref div - one month | 411.13 | |
| 5/30/2019 | 6% Interest/pref div - one month | 413.18 | |
| 6/30/2019 | 6% Interest/pref div - one month | 415.25 | |
| 7/8/2019 | Q3 fees | | 30.00 |
| 7/8/2019 | Q3 fees | | 12.00 |
| 7/31/2019 | 6% Interest/pref div - one month | 417.32 | |
| 8/20/2019 | 6% Interest/pref div - 20 days | 279.61 | |
| 8/20/2019 | **Principal and Interest** | **84,161.64** | |
| 8/20/2019 | Return of $50,400 principal | **(50,400.00)** | |
| 8/20/2019 | Balance | **33,761.64** | |
| 8/30/2019 | 6% Interest/pref div - 10 days | 56.27 | |
| 9/30/2019 | 6% Interest/pref div - one month | 169.09 | |
| 10/7/2019 | Q4 fees | | 30.00 |
| 10/7/2019 | Q4 fees | | 12.00 |
| 10/9/2019 | Disbursement Fee Paid | | 10.00 |
| 10/25/2019 | 6% Interest/pref div - 25 days | 141.61 | |
| 10/25/2019 | Balance | **34,128.61** | |
| 10/25/2019 | Distribution | **(1,200.00)** | |
| 10/25/2019 | Balance | **32,928.61** | |
| 10/31/2019 | 6% Interest/pref div - 6 days | 32.93 | |
| 11/30/2019 | 6% Interest/pref div - one month | 164.81 | |
| 12/30/2019 | 6% Interest/pref div - one month | 165.63 | |
| 1/6/2020 | Q1 fees | | 30.00 |
| 1/6/2020 | Q1 Fishtown Royal Hold | | 12.00 |
| 1/30/2020 | 6% Interest/pref div - one month | 166.46 | |
| 2/29/2020 | 6% Interest/pref div - one month | 167.29 | |

**Summary Statement of Investment**          ForgeTrust C/F/B/O
Interest is compounded monthly               Jeffrey Koblenz ROTH IRA
      Account Number   IRA784977

| Date | Description | Amount | Fees |
|---|---|---|---|
| 3/30/2020 | 6% Interest/pref div - one month | 168.13 | |
| 4/7/2020 | Q2 fees | | 50.00 |
| 4/7/2020 | Q2 Fishtown Royal Hold | | 12.00 |
| 4/30/2020 | 6% Interest/pref div - one month | 168.97 | |
| 5/31/2020 | 6% Interest/pref div - one month | 169.81 | |
| 6/30/2020 | 6% Interest/pref div - one month | 170.66 | |
| 7/6/2020 | Q3 fees | | 50.00 |
| 7/6/2020 | Q3 Fishtown Royal Hold | | 12.00 |
| 7/30/2020 | 6% Interest/pref div - one month | 171.52 | |
| 8/30/2020 | 6% Interest/pref div - one month | 172.37 | |
| 9/30/2020 | 6% Interest/pref div - one month | 173.24 | |
| 10/5/2020 | Q4 fees | | 50.00 |
| 10/5/2020 | Q4 Fishtown Royal Hold | | 12.00 |
| 10/30/2020 | 6% Interest/pref div - one month | 174.10 | |
| 11/30/2020 | 6% Interest/pref div - one month | 174.97 | |
| 12/31/2020 | 6% Interest/pref div - one month | 175.85 | |
| 1/6/2021 | Q1 fees | | 75.00 |
| 1/6/2021 | Q1 Fishtown Royal Hold | | 12.00 |
| 1/30/2021 | 6% Interest/pref div - one month | 176.73 | |
| 2/28/2021 | 6% Interest/pref div - one month | 177.61 | |
| 3/30/2021 | 6% Interest/pref div - one month | 178.50 | |
| 4/7/2021 | Q2 fees | | 75.00 |
| 4/7/2021 | Q2 Fishtown Royal Hold | | 12.00 |
| 4/19/2021 | Collection cost - UPS overnight package | | 26.76 |
| 4/30/2021 | 6% Interest/pref div - one month | 179.39 | |
| 5/30/2021 | 6% Interest/pref div - one month | 180.29 | |
| 4/26/2021 | Collection cost - USPS certified mail | | 12.45 |
| 5/24/2021 | Collection cost - USPS certified mail | | 17.60 |
| 5/30/2021 | Transaction fees to close IRA custodial fund | | 200.00 |
| | **Total** | **$ 36,237.87** | **$ 1,003.81** |
| | **Total** | **$ 37,241.68** | |

4/30/2021

251 Fulton Street, LLC - 1 Birchwood Lane, Suffern, NY 10901

Re: Ryan Kim Shareholder Termination Agreement
Release of Class B Membership Shares

To Mr. Koblenz:

Effective immediately, on this 30th day of April, 2021, in consideration of the share repurchase received, I, Jeffery Koblenz, formally agree to relinquish my holdings for the price of $27,500 payable within the next 10 business days. I agree to disassociate from any held membership, powers, associations and/or affiliations with 251 Fulton Street, LLC, [hereinafter collectively referred to as "Company"]. Furthermore, I agree to relinquish any assets, real and tangible, being held in my possession on behalf of the Company to its respective owner. My dissociation is imperative to protect the best interests of 251 Fulton Street, LLC. .

Before accepting the following terms of my resignation, I received an opportunity to review this letter with independent legal counsel, and freely agree to its contents under no duress or undue influence. I have received adequate consideration in the form of absolute confidentiality, mutual release and waiver from any legal actions, liabilities, or disclosure of the nature of my resignation and relinquishment of Class B Member shares in perpetuity. The terms of my official resignation are as follows:

1. Pursuant to the above-paragraph, I agree to formally disassociate myself from the Company, unnamed subsidiaries, fictitious names having any relationship with said companies, and will not hold myself out as a representative in any capacity for such.

2. I, Jeffery Koblenz, hereby and exclusively remise, release and forever discharge the Companies, their officers, employees, subsidiaries, affiliates and their heirs, executors, administrators, insurers, successors and assigns from all manner of claims or causes of action of any type or nature whatsoever, known or unknown, suspected or unsuspected, including for damages arising out of my affiliation, and involvement with the Company that I ever had, now have or hereafter may have against the aforementioned the Company, their officers, employees, subsidiaries, and affiliates.

3. I, Jeffery Koblenz, for myself individually and incorporated, and each of my respective heirs, administrators, successors and assigns, employees, officers, directors, shareholders, representatives, subsidiaries, affiliates, related incorporated and non-

1



Exhibit "B"

corporate entities consisting of shared members, partners or shareholders, attorneys and agents, members, and managers, do hereby release the Companies, individually and incorporated, and each of their respective heirs, administrators, successors and assigns, employees, officers, directors, shareholders, representatives, subsidiaries, affiliates, related incorporated and non-corporate entities, attorneys and agents, members and managers, from any and all debts, claims or alleged claims, obligations, demands, judgments, accounts, bonds, promises, negotiations and/or contracts, agreements, understandings, representations, warranties, damages, liens, encumbrances, suits, current or future mechanics liens or mechanics lien claims, or causes of action of any kind whatsoever, in law or equity, whether known or unknown, actual, contingent or alleged, including but not limited to, any current or future claims, including those arising from and/or relating to my employment, affiliation, and involvement with Companies , and/or those which were, or could have been raised contemporaneous to this resignation, and/or those which arise from or relate to the my involvement, employment, and/or association with the Companies (collectively, "Claims"), that any I ever had, now have, or may have in the future. I, individually and incorporated, further agree, understand and acknowledge, as further consideration and inducement for resignation, that it shall apply to all known, unknown, anticipated or unanticipated claims or demands directly or indirectly resulting from, based upon or in any way arising out of or from or connected with my involvement, employment, and/or association with the Companies.

4. I, Jeffery Koblenz, also agree that if it is ever adjudicated or determined in any action or proceeding that if the Companies and/or officers, jointly or individually, are jointly liable with others for the damages stemming from my ownership, employment, and/or involvement with any Company, and a claim is made by such others, I will indemnify the Company and corporate officers, employees, and affiliates, defend all such claims and satisfy any judgment or award against Companies, its officers, employees and affiliates resulting from such a claim. The consideration for this Joint Tortfeasor Release, therefore, is received in the form of a promise for confidentiality.

5. As consideration for my resignation and relinquishment of any and all equity in the Company, the reasons for such not fully disclosed herein, shall be kept confidential. It is understood that this confidentiality is paramount to my resignation. In turn, I agree to keep the terms and reasons for my resignation as strictly confidential.

7. This supersedes any and all prior agreements between myself and the Company. I have not received any representations, warranties, agreements nor undertakings, written or oral, between or among the Companies hereto relating to the subject matter of my resignation that are not fully expressed herein.

8. I, Jeffery Koblenz, have consulted with legal counsel in connection with the execution of this resignation and/or have had the opportunity to consult with counsel prior to executing this resignation. I further understand that Arsen Kashkashian, Esquire and the firm of Kashkashian & Associates represent the Companies' interests and not my own. I reviewed this draft with independent legal counsel, and accept all terms.

9. I tender this share repurchasing under no duress or undue influence. It is my

2

absolute intention and best interests to terminate my membership within 251 Fulton Street, LLC. I fully intend to comply with the terms of my resignation, and understand that in the event my conduct violates any above term, I relinquish my right to confidentiality.

[Signature Page to Follow]

**The undersigned hereby certify that they have read and fully understand all of the terms, provisions, and conditions of this Agreement and have voluntarily executed this Agreement.**

**251 Fulton Street LLC**

_____

Managing Partner          Date

_____

Jeffery Koblenz          Date

[Notary Page to Follow]

ACKNOWLEDGEMENT OF Jeffery Koblenz

STATE OF              : :             ss

COUNTY OF

On this _____ day of _____, 2020 before me, _____ a notary public, the undersigned individual, personally appeared _____ known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

3

_____
Notary Public

Individual:
By:
Date:

## ACKNOWLEDGEMENT OF RYAN KIM

STATE OF                    : :              ss

COUNTY OF

On this _____ day of _____, 2020 before me, _____ a notary public, the undersigned individual, personally appeared _____ known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

Individual:
By:
Date:

**[End of Document]**